EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wilmarie Díaz Hernández y otros<br><br>Apelantes<br><br>v.<br><br>MAPFRE PRAICO y otros<br><br>Apelados | Certiorari<br><br>2024 TSPR 46<br><br>213 DPR ___ |

Número del Caso:  AC-2022-0107

Fecha:  3 de mayo de 2024

Tribunal de Apelaciones:

    Panel V

Representante legal de la parte peticionaria:

    Lcdo. Ronald Barrau Lake

Representante legal de la parte recurrida:

    Lcdo. Luis O. Soto Colón

Materia: Ley de Protección Social por Accidentes de Vehículos de Motor - Curso de acción que debe seguir el Tribunal de Primera Instancia cuando un lesionado, que recibió los beneficios de la ACAA, presenta una demanda en daños y perjuicios antes de que transcurra el término de los 90 días previstos en el estatuto para que la agencia se subrogue en los derechos del lesionado.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilmarie Díaz Hernández y
otros

     Apelantes

       v.               AC-2022-107

Mapfre Praico y otros

     Apelados

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico a 3 de mayo de 2024.

El recurso ante nuestra consideración nos brinda la oportunidad de analizar las disposiciones estatutarias referentes a las acciones de subrogación e intervención según comprendidas en la Ley Núm. 111-2020, conocida como la *Ley de Protección Social por Accidentes de Vehículos de Motor* (Ley de la ACAA), 9 LPRA sec. 316 *et seq*. A su vez, precisaremos el curso de acción que debe seguir el Tribunal de Primera Instancia cuando un lesionado que recibió los beneficios de la Administración de Compensaciones por Accidentes de Automóviles (ACAA) presente una demanda en daños y perjuicios antes de que transcurra el término de los 90 días previstos en el estatuto para

que la agencia se subrogue en los derechos del lesionado.

Adelantamos que, en aras de salvaguardar el principio rector de la economía procesal y de acuerdo con lo resuelto en *Alvarado v. Calaiño Romero*, *infra*, resolvemos que **las demandas que un beneficiado de la ACAA presente de manera prematura son anulables y no nulas**. Veamos.

**I**

El 9 de abril de 2022, la Sra. Wilmarie Díaz Hernández y el Sr. José Agosto Rivera, ambos por sí y en representación de la Sociedad Legal de Gananciales que juntos componen (los apelantes), presentaron una demanda sobre daños y perjuicios en contra de MAPFRE Praico, el Sr. Yariel A. López Pagán y otros (los apelados) en el Tribunal de Primera Instancia.[1] En síntesis, la causa de acción surgió a raíz de un accidente automovilístico donde el señor Agosto Rivera fue impactado en la parte posterior de su auto por el señor López Pagán. Como consecuencia, el señor Agosto Rivera sufrió una serie de daños físicos por los cuales recibió tratamiento médico provisto por la cubierta de la ACAA.[2]

Como resultado de la acción presentada, el 20 de abril de 2022, el foro de primera instancia notificó una orden en la que dispuso que los apelantes tendrían un término de 30 días para evidenciar el cabal cumplimiento con lo dispuesto en la Ley de la ACAA, en aquello referente al derecho de

---

[1] Apéndice de la *Apelación de la parte demandante*, págs. 26-27.

[2] *Íd.*

indemnización que goza la ACAA.[3] En atención a la orden, los apelantes le acreditaron al foro de primera instancia que le habían remitido a la ACAA una copia de la demanda por correo certificado con acuse de recibo el 20 de abril de 2022.[4]

Sin embargo, tras entender que incumplieron, el foro de primera instancia ordenó a los apelantes que, en un término de 10 días, presentaran la *Resolución firme y ejecutoria* mediante la cual la ACAA expresara no tener interés en instar una acción en contra de los apelados, so pena de desestimación.[5] Oportunamente los apelantes presentaron una moción en la que expusieron, en lo pertinente, que a pesar de haber informado a la ACAA sobre la demanda del caso de epígrafe, la agencia no había notificado ningún documento.

En vista de lo anterior, el Tribunal de Primera Instancia notificó una *Orden* en la que dispuso que los apelantes no cumplieron con lo ordenado, por lo que les otorgó un último término de 5 días para así hacerlo.[6] Ello fue a tenor con lo dispuesto en el Art. 7(4)(c) de la Ley de la ACAA, 9 LPRA sec. 3167(C), que establece: "*[e]l lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos*

---

[3] Cabe destacar que el Tribunal de Primera Instancia aludió a la sec. 7 de la Ley de Protección Social por Accidentes de Automóviles, Ley 138 de 26 de junio de 1968, según enmendada, 9 LPRA ant. sec. 2056.

[4] *Íd.*, págs. 29-30.

[5] *Íd.*, pág. 37.

[6] Apéndice de la *Apelación de la parte demandante*, pág. 41.

*noventa días a partir de la fecha en que la resolución de la administración fuere firme y ejecutoria*".[7]

Así las cosas, el 16 de junio de 2022, los apelantes presentaron al Tribunal de Primera Instancia una *Moción solicitando prórroga para presentar próximo escrito* en la que expusieron una serie de gestiones extrajudiciales que realizaron con la ACAA para intentar cumplir con lo ordenado por el Tribunal.[8] El foro de primera instancia concedió la prórroga hasta el 7 de julio de 2022.[9]

Oportunamente, los apelantes presentaron una *Moción en cumplimiento de orden y otros extremos* en la que informaron las gestiones realizadas con la ACAA.[10] En esta, acompañaron una correspondencia oficial emitida por la ACAA que expresó lo siguiente:

> El Departamento de Asuntos Legales recibió la Demanda de Wilmarie Díaz Hernández vs. Mapfre (Caso ACAA: 10-286734-01). La Oficina Regional de San Juan identificó que en este caso no hay exclusión de ley. **Le notificamos que la ACAA no intervendrá en el caso antes mencionado.** (Negrilla Suplida).[11]

Sin embargo, el Tribunal de Primera Instancia determinó que lo sometido por los apelantes no cumplía con lo ordenado y dispuesto en ley.[12] A raíz de ello, los apelantes presentaron

---

[7] *Íd.*; Art. 7 de la *Ley de Protección Social por Accidentes de Vehículos de Motor* de 2020, *supra*.

[8] Apéndice de la *Apelación de la parte demandante*, págs. 42-53.

[9] *Íd.*, pág. 54.

[10] Apéndice de la *Apelación de la parte demandante*, págs. 55-56.

[11] *Íd.*

[12] Apéndice de la *Apelación de la parte demandante*, págs. 57.

una moción en la que le expusieron al foro de primera instancia el interés de continuar con los trámites extrajudiciales con la ACAA.[13]

En vista de lo anterior, el 12 de julio de 2022, el foro de primera instancia emitió una *Sentencia* en la que dictaminó lo siguiente: "*Ante la ausencia de la Resolución firme y ejecutoria requerida en Ley y sin haberse establecido que han transcurrido los términos dispuestos para que la parte demandante pudiera presentar su causa de acción, este Tribunal desestima sin perjuicio por prematura la Demanda*".[14]

En desacuerdo, el 14 de julio de 2022, los apelantes presentaron una *Moción de reconsideración* en la que acompañaron una *Resolución* que la ACAA emitió ese mismo día. Allí, la ACAA expuso que ninguna de las partes se encontraba entre las exclusiones enumeradas por el Art. 6 de la Ley de la ACAA, 9 LPRA sec. 3166, por lo que decidió no intervenir para ser indemnizada por los gastos incurridos en las víctimas del accidente. Así, concluyó que:

> Debido a que la lesionada/reclamante de epígrafe, [Sra. Wilmarie Díaz Hernández], cuenta con su propia representación legal y **la ACAA ha determinado que no intervendrá en el caso presentado ante el Tribunal de Primera Instancia, Sala de San Juan,** la Administración dicta Resolución autorizando a la lesionada/reclamante a entablar demanda y/o transigir su causa de acción que tuviere contra cualquier tercero

---

[13] *Íd.*, págs. 58-60.

[14] *Íd.*, págs. 11-13.

responsable de los daños que haya sufrido. (Negrilla Suplida).[15]

No obstante, el foro de primera instancia declinó reconsiderar el dictamen por entender que el término de los 90 días que dispone la Ley de la ACAA no había transcurrido y, por lo tanto, reiteró que la demanda era prematura.[16]

Inconformes, los apelantes acudieron ante el Tribunal de Apelaciones y presentaron los siguientes señalamientos de error:

> **PRIMER ERROR:** Erró en derecho el Honorable Tribunal de Primera Instancia al desestimar, sin perjuicio, la demanda del presente caso.
>
> **SEGUNDO ERROR:** El Honorable Tribunal de Primera Instancia, cometió error manifiesto de derecho al interpretar restrictivamente y en contra del lesionado la Ley de Protección Social por Accidentes de Vehículos de Motor (ACAA) y al no considerar, por analogía, las explícitas expresiones del Honorable Tribunal Supremo de Puerto Rico, respecto a que los casos de la Corporación del Fondo del Seguro del Estado que se presentan prematuramente no deben de desestimarse por ese único fundamento. Alvarado v. Calaiño Romero, 104 DPR 127 (1975).[17]

Así las cosas, el foro apelativo intermedio emitió una *Sentencia* en la que, utilizando un razonamiento idéntico al esbozado por el Tribunal de Primera Instancia, confirmó su desestimación. Entiéndase por ello que, al momento en que los apelantes presentaron la acción en el foro de primera instancia, esta era prematura por lo cual sería nula.

---

[15] *Íd.*

[16] Apéndice de la *Apelación de la parte demandante*, pág. 69.

[17] *Íd.*, págs. 70-137.

Los apelantes presentaron una *Moción de reconsideración* sin éxito y, por ello, presentaron ante esta Curia el recurso de *Apelación* que nos ocupa. En síntesis, y en lo que nos atañe, los apelantes señalaron que erró el foro apelativo intermedio al no concluir que en este caso, lo que la ACAA tenía a su alcance era una causa de acción de intervención y no de subrogación. Asimismo, alegaron que, bajo ninguno de los dos escenarios, procedía la desestimación sin perjuicio.[18]

Luego de examinar el recurso de *Apelación* y los planteamientos esbozados por las partes, nos encontramos listos para resolver. Así, procedemos a repasar la doctrina jurídica concerniente a la controversia planteada.

## II

A. *Ley de Protección Social por Accidentes de Vehículos de Motor*

La *Ley de Protección Social por Accidentes de Automóviles*, Ley Núm. 138 de 26 de junio de 1968, según enmendada, 9 LPRA ant. sec. 2051 *et seq*, fue impulsada por la Asamblea Legislativa como respuesta al "vertiginoso incremento en los accidentes que a diario ocurren en nuestras vías de rodaje así como el correlativo aumento en el número de víctimas involucradas en ellos".[19] Además, por disposición de la referida ley, se creó la Administración de Compensaciones por Accidentes de Automóviles (ACAA) para que

---

[18] *Íd.*

[19] *Martínez v. ACAA*, 157 DPR 108, 115 (2002).

operara un sistema de seguro compulsorio que atendiera la mencionada problemática.

Así, mediante dicho sistema de seguro compulsorio se garantiza a las víctimas de accidentes vehiculares el acceso a servicios médicos y, en determinadas ocasiones, el derecho a una compensación por las lesiones sufridas.[20] No obstante, en aras de atemperar el sistema de seguro compulsorio con los cambios que han surgido en nuestra sociedad, la Asamblea Legislativa derogó la referida legislación mediante la aprobación de la Ley Núm. 111-2020, *Ley de Protección Social por Accidentes de Vehículos de Motor* (Ley de la ACAA)*,* 9 LPRA sec. 3161 et seq. En esta, el propósito fundamental de la ley se mantuvo, a saber: "reducir los trágicos efectos sociales y económicos producidos por los accidentes de tránsito sobre los lesionados, su familia y demás dependientes".[21]

Por otra parte, la ACAA cuenta con una serie de mecanismos para recobrar los gastos incurridos en el cuidado de los lesionados. En este caso nos enfrentamos a dos de ellos. El primero es la acción de intervención, la cual se le reconoce a la ACAA desde el origen de la ley (allá para el 1968). El segundo de estos mecanismos es la acción de subrogación que se presenta como uno de los "cambios fundamentales" incluidos en la Ley de la ACAA del 2020, tal y como se le concede a la Corporación del Fondo del Seguro

---

[20] *Íd.*

[21] Exposición de Motivos de la Ley Núm. 111-2020 (2020 [parte 3] Leyes de Puerto Rico 2971, 2974).

del Estado (CFSE) al amparo de su ley orgánica.[22] En vista de lo anterior, procedemos a discutir las determinadas instancias en las que cada uno de estos mecanismos aplica, y sus respectivas consecuencias. Veamos.

### i. La intervención por parte de la ACAA

La Ley de la ACAA expresamente autoriza a esta agencia a intervenir en determinadas instancias. Respecto a ello, el Art. 7(B)(4) de la legislación dispone lo siguiente:

> La Administración tendrá derecho a intervenir ante el Tribunal de Primera Instancia competente en todo caso en que se solicite ante los tribunales indemnización a base de la aplicación del principio de negligencia, por razón de daños o lesiones por los cuales se proveyeron beneficios bajo esta Ley. El lesionado o sus sucesores en derecho serán requeridos por el tribunal correspondiente para que, previa la continuación de los procedimientos en el caso, la parte demandante notifique a la Administración con copia de la demanda radicada, la cual incluirá en su epígrafe o en una de sus alegaciones el número de caso de su reclamación en la Administración. El incumplimiento de lo dispuesto en este subinciso será causa suficiente para que se desestime, sin perjuicio, la acción legal correspondiente, previo a que el Tribunal otorgue un término discrecional para el cumplimiento de lo aquí dispuesto, el que nunca será menor de treinta (30) días calendario.[23]

Del precitado artículo se desprende que la ACAA puede intervenir en un pleito cuando en los daños o lesiones sufridas, opere el principio de negligencia. Además, el legislador impone al Tribunal de Primera Instancia a que le requiera a los lesionados la obligación de acreditar la

---

[22] *Íd.*

[23] 9 LPRA sec. 3167.

notificación a la ACAA de la presentación de la demanda. En caso de incumplimiento, el foro de primera instancia podrá desestimar, sin perjuicio, la acción dentro de un término discrecional no menor de 30 días. De esta forma, la continuación de los procedimientos está sujeto a que el lesionado le acredite al tribunal que le notificó copia de la demanda a la ACAA. No obstante lo anterior, la intervención opera en favor de la ACAA una vez transcurran los 90 días que esta ostenta, al amparo de su ley orgánica, para ejercer su derecho de subrogación.

### ii. Acción de subrogación

La acción de subrogación se ha discutido en varias instancias por esta Curia y emana del campo de derecho de seguros.[24] Se refiere a la figura jurídica en la que una aseguradora sustituye a su asegurado en el ejercicio de las acciones o los derechos que este tiene en contra de los causantes de un daño.[25] Hemos señalado que el efecto principal de la subrogación es que el nuevo acreedor se coloca en la misma situación jurídica, en que se encontraba el acreedor original respecto al deudor.[26]

---

[24] *Arzuaga et als. v. Empresas Brunet et al.*, 211 DPR 803 (2023), expresamos que la acción de subrogación se tiene que presentar oportunamente dentro del término perentorio de 90 días. Determinamos que: "no admite interrupción ni suspensión del término por ser radical y automático, incluso ante una desestimación sin perjuicio". Así, particularmente teniendo en cuenta el fin social de la compensación de accidentes del trabajo, la ley persigue fomentar el ejercicio diligente del Fondo en beneficio del obrero lesionado. Véanse, también: *Integrand Assurance v. Codeco*, 185 DPR 146 (2012); *CSMPR v. Carlo Marrero*, 182 DPR 411, 417 (2011).

[25] *CSMPR v. Carlo Marrero*, 182 DPR 411, 417 (2011).

[26] *Íd.* en la pág. 419.

Con relación a la figura de la subrogación, el tratadista Couch expresa lo siguiente:

> For those who do not often visit the field of subrogation, the **basic terminology can easily complicate the case to the point of frustration.** This is particularly true in light of the number of different entities and events that usually must be considered in the typical insurer subrogation case. These cases typically involve a minimum of three entities (**insurer, insured, and party who caused the loss**).
>
> [...]
>
> The most basic terminology points, of course, are that in the context of an insurer's subrogation rights regarding the insured's claims against a third party, the insured is the "subrogor" and the insurer becomes the "subrogee". **The third party against whom the insured has an action may be referred to simply as the third party or by any number of other terms, including the following: the tortfeasor, the wrongdoer, the primarily liable party, the defendant, the party who caused the loss, and the responsible party.** (Negrilla Suplida).[27]

A grandes rasgos, Couch expone que, en aquellas ocasiones en las que sea posible hablar de una acción de subrogación, contaremos con un mínimo de tres partes: aseguradora, asegurado y quien figura como responsable de la lesión.

Ahora bien, según mencionamos, la acción de subrogación se incluyó en la nueva Ley de la ACAA replicando el Art. 29 de la Ley de la CFSE.[28] En lo pertinente, el Art. 7(A)(4) de la Ley de ACAA reza lo siguiente:

> 4. Acción de subrogación.
> La Administración tendrá la facultad de subrogarse los derechos que tuviere un lesionado

---

[27] 16 Couch on Ins. sec. 222:2.

[28] Ley Núm. 45-1935, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, según enmendada, 11 LPRA sec. 32.

o sus beneficiarios de presentar una reclamación judicial por daños y perjuicios contra terceros en los casos en que la Administración, de acuerdo con los términos de esta Ley, estuviere obligado de compensar a estos en cualquier forma.

En los casos en que la lesión, enfermedad, incapacidad o muerte que dan derecho de compensación al lesionado o sus beneficiarios, de acuerdo con esta Ley, le hubiere provenido bajo circunstancias que hicieren responsables a terceros de tal lesión, enfermedad o muerte, el lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad, incapacidad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por la Administración, que podrá subrogarse en los derechos del lesionado o sus beneficiarios para entablar la misma acción en la siguiente forma:

**(a)** Cuando un lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra terceros, en los casos en que la Administración, de acuerdo con los términos de esta Ley, estuviere obligado a compensar en alguna forma o a proporcionar tratamiento, **la Administración se subrogará en los derechos del lesionado o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del lesionado o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria**, y cualquier cantidad que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso, se entregará al lesionado o a sus beneficiarios con derecho a la misma.

**(b)** Si la Administración dejare de entablar demanda contra la tercera persona responsable, según se ha expresado en el párrafo anterior, **el lesionado o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, sin que vengan obligados a resarcir a la Administración** por los gastos incurridos en el caso.

**(c)** El lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, **hasta después de transcurridos noventa (90) días a partir de la fecha en que la**

**resolución de la Administración fuere firme y ejecutoria.** (Negrilla Suplida).[29]

En síntesis, idéntico que en la Ley de la CFSE, el legislador le reconoció a la ACAA el derecho a subrogarse cuando expresamente le reservó a la agencia el primer turno para instar acción contra un tercero responsable. Es decir, si el lesionado tuviera derecho a presentar una demanda por daños contra el tercero responsable, la ACAA podrá subrogarse en los derechos del lesionado. Nótese que, para ejercitar el derecho de subrogación, la ACAA tiene hasta los 90 días siguientes a la fecha en que la *Resolución* de la agencia administrativa advenga firme y ejecutoria.

A su vez, el inciso (b) permite que el lesionado presente la demanda contra el tercero si la ACAA no ejerciera el derecho de subrogación en los 90 días que dispone la ley para hacerlo. Por ello, el acápite (c) expresamente le prohíbe al lesionado entablar una demanda o transigir con el tercero responsable ninguna causa de acción antes de los 90 días de que la *Resolución* sea firme y ejecutoria. A pesar de esta prohibición, el legislador no contempló el escenario que nos ocupa, a saber: ¿cómo debe proceder el foro de primera instancia si un lesionado presenta una demanda antes de que la ACAA ejerza su derecho de subrogación contra el tercero responsable?

Si bien la ley guarda silencio al respecto, para contestar la interrogante, debemos identificar quién es el

---

[29] 9 LPRA sec. 3167.

tercero responsable en el ámbito de la ACAA. Para ello, la Exposición de Motivos de la Ley de la ACAA nos exhorta a utilizar como punto de partida la Ley de la CFSE.

### iii. El tercero responsable

En primer lugar, al igual que en la ACAA, el Art. 29 de la Ley de la CFSE establece que,[30] en aquellos casos en los que la lesión, enfermedad o muerte sufrida por el empleado en su lugar de trabajo sea imputable a un tercero, tanto el obrero lesionado como el Administrador de la CFSE podrán reclamarle judicialmente a ese tercero responsable.[31]

En nuestro estudio de la jurisprudencia referente a la acción de subrogación por la CFSE, observamos que existe una relación tripartita que se divide de la siguiente manera: 1) el patrono que cuenta con la inmunidad de la CFSE; 2) el empleado (lesionado); y 3) el tercero que provoca los daños del empleado y quien es ajeno a la relación obrero patronal.[32]

Si extrapolamos la relación al ámbito de la ACAA, esta sería la siguiente: 1) la ACAA en el lugar del Fondo como la aseguradora; 2) el lesionado del accidente vehicular en el lugar del empleado; y 3) el tercero que provoca los daños del lesionado y quien es ajeno a la relación entre la ACAA y el lesionado.

---

[30] 11 LPRA sec. 32.

[31] *Padín v. Cía. Fom. Ind.*, 150 DPR 403, 412 (2000).

[32] *Sevilla v. Municipio Toa Alta*, 159 DPR 696 (2003); *Guzmán y Otros v. De Jesús*, 155 DPR 296 (2001); *Alvarado v. Calaiño Romero*, 104 DPR 127 (1975).

Así, de acuerdo con las tres partes que discute el tratadista Couch en la figura de la subrogación, encontramos que la figura del "tercero responsable" que alude la Ley de la ACAA, se refiere a la persona llamada a responder por los daños que el lesionado sufrió a causa del accidente vehicular.

### iv. *Alvarado v. Calaiño Romero*, 104 DPR 127 (1975)

Con este marco legal de referencia, resulta pertinente al caso que nos ocupa lo resuelto en *Alvarado v. Calaiño Romero*, *supra*.[33] Allí, aconteció que el obrero presentó una demanda previo a que la decisión de la CFSE fuere firme y ejecutoria y antes de que transcurriera el término de 90 días para que la CFSE se subrogara en los derechos del lesionado. No obstante, tras analizar la legislación, la naturaleza del interés y la relación que esta protege, resolvimos que, ante una demanda que se presentara de manera prematura, no debía considerarse ineficaz y nula, tal como sugerimos en *Negrón v. Comisión Industrial,* 76 DPR 301 (1954).[34]

En *Alvarado v. Calaiño Romero*, *supra*, expresamos que **la declaración de nulidad podría proteger al tercero indebidamente** cuando lo que surge de la legislación es el deseo de proteger los derechos de subrogación de la CFSE.[35] Además, determinamos que, cónsono con el propósito por el cual el legislador creó la Ley de la CFSE, resulta en el mayor

---

[33] *Alvarado v. Calaiño Romero*, 104 DPR 127 (1975).

[34] *Negrón v. Comisión Industrial*, 76 DPR 301 (1954).

[35] *Alvarado v. Calaiño Romero*, 104 DPR 127 (1975).

beneficio para el lesionado resolver que las demandas radicadas prematuramente son anulables, en vez de nulas.

Como resultado de lo anterior, concluimos que únicamente la CFSE podría requerir su anulación mediante la radicación en tiempo de su acción de subrogación y la correspondiente súplica de declaración de nulidad.[36] No existe razón por la cual debamos alejarnos de los resuelto por este Tribunal al considerar una controversia al amparo de la Ley de la ACAA.

A la luz de lo anterior y, teniendo presente las diferencias entre la intervención y la acción de subrogación, pasemos ahora a aplicar al caso de autos la normativa antes reseñada.

**III**

¿Procedía la desestimación por el fundamento de que los apelantes presentaron su demanda previo al término reservado para la acción de subrogación por parte de la ACAA? Concluimos que no. Veamos.

Los apelantes señalaron que el foro apelativo intermedio erró al no dictaminar que en este caso lo que la ACAA tenía a su alcance era una causa de acción de intervención y no de subrogación, y que bajo ninguno de los dos escenarios procedía la desestimación. Por estar

---

[36] *Íd.* en la pág. 135.

íntimamente relacionados entre sí, discutiremos los errores señalados en conjunto.

Según expusimos en la normativa aplicable, la Ley de la ACAA dispone dos mecanismos para salvaguardar sus derechos luego de compensar a un lesionado, a saber: la acción de subrogación y la intervención. En este caso, los apelantes entendieron que la ACAA solo tenía a su alcance la intervención porque le notificaron a la ACAA copia de la demanda. Entretanto, los foros recurridos determinaron que la acción que operaba era la acción de subrogación porque la ACAA no había emitido la *Resolución final y ejecutoria* que da paso a que comience a transcurrir el plazo para que la agencia ejercitara el derecho de subrogación. Fundamentado en esto y, debido a que los apelantes presentaron la demanda previo al transcurso de los 90 días dispuestos en la Ley de la ACAA, los foros *a quo* dictaminaron que la presentación de la demanda se realizó de manera prematura, por lo que procedía la desestimación sin perjuicio.

No nos cabe duda que la divergencia en las posturas de las partes estribó principalmente en una confusión sobre quién es la figura del "tercero responsable" al que la Ley de la ACAA hace referencia. Erróneamente, los apelantes nos argumentan que, en su situación particular de hechos, no figura un tercero responsable. Según estos, en el accidente automovilístico que llevó a la presentación de la demanda, estuvieron involucrados el lesionado y el responsable de las lesiones, es decir, la persona que ocasionó el accidente.

Del marco legal que expusimos surge que, en el contorno de la ACAA, **el tercero responsable es la persona que provocó el accidente vehicular donde el lesionado sufrió los daños por los cuales la ACAA le brindó servicios**. Por lo tanto, la ACAA tiene el derecho de subrogarse en la figura del lesionado para cobrarle al tercero responsable por los gastos en que incurrió al brindarle los servicios que recibió el lesionado.

Resuelta la interrogante sobre a quién se refiere la Ley de la ACAA con el "tercero responsable", resta determinar ¿Cuál es el curso de acción que debe seguir el Tribunal de Primera Instancia cuando un lesionado que recibió los beneficios de la ACAA presente una demanda en daños y perjuicios antes de que discurra el término de los 90 días previstos en el estatuto para que la agencia se subrogue en los derechos del lesionado?

Tal como consideramos en *Alvarado v. Calaiño Romero*, *supra*, la declaración de nulidad de una demanda que se presente previo al transcurso de los 90 días reservados para la acción de subrogación podría proteger indebidamente al tercero responsable. De manera que, en el presente caso, la nulidad de la causa de acción protegería indebidamente a la persona que provocó el accidente de auto en donde el lesionado sufrió daños. Debemos tener presente que, al igual que en la CFSE, la acción de subrogación es una medida para salvaguardar exclusivamente los intereses de la ACAA. Por ello, a pesar de que la Ley de la ACAA no dispone que le confiere la autoridad para solicitar la declaración de nulidad, debido al

reconocimiento del derecho de subrogación, la ACAA tiene la facultad de así peticionarlo y nada impide que igualmente pueda renunciarlo de manera expresa.

En vista de lo anterior, diferimos del razonamiento de los foros inferiores y concluimos que interpretaron erradamente que el tribunal está obligado a desestimar la demanda tal y como si esta fuera nula. Más bien, determinamos que, en circunstancias como la del caso de autos, la causa de acción es anulable. En otras palabras, coincidimos con el razonamiento de *Alvarado v. Calaiño Romero*, *supra*, en cuanto a que en los casos donde una persona lesionada presente una causa de acción en daños y perjuicios posterior a finalizar el trámite administrativo, pero previo a que transcurran los 90 días para que la ACAA presente la acción de subrogación, el **foro de primera instancia no desestimará la demanda de manera automática.**[37]

**En aras de salvaguardar la economía procesal**, a menos que la ACAA renuncie a su derecho de presentar la acción de subrogación antes del plazo correspondiente, **procede que los tribunales paralicen los procedimientos hasta tanto transcurran los 90 días dispuestos en ley.** Solamente en los casos en que la ACAA requiera la anulación mediante la radicación oportuna[38] de su acción de subrogación y la correspondiente súplica de declaración de nulidad es que el Tribunal de Primera Instancia procederá con la desestimación,

---

[37] *Alvarado v. Calaiño Romero*, 104 DPR 127 (1975).

[38] *Arzuaga et als. v. Empresas Brunet et al.*, 211 DPR 803 (2023).

sin perjuicio. Consecuentemente, este proceder impedirá que se coloque al lesionado en una peor posición que al tercero responsable del accidente.

## IV

Por los fundamentos expuestos, se revocan las sentencias de los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilmarie Díaz Hernández y
otros

      Apelantes

        v.                        AC-2022-107

Mapfre Praico y otros

      Apelados

SENTENCIA

En San Juan, Puerto Rico a 3 de mayo de 2024.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revocan las sentencias de los foros *a quo* y devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de conformidad con lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo